# UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

**CHRISTINA MOORE,**

        Plaintiff,

v.

    Case No: 4:17-cv-00873-DGK

**CONCORD FINANCE, INC. d/b/a
SPEEDY CASH, et al.**

        Defendants.

## PLAINTIFF'S SUGGESTIONS IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S PETITION

COMES NOW Plaintiff Christina Moore, by and through her attorneys of record,

respectfully submits the following Suggestions in Opposition to Defendants' Motion to Dismiss

Plaintiff's Petition:

### Procedural Background

Defendant filed a Motion to Dismiss Plaintiff's Petition on October 23, 2017. Doc. 4, 5.

Defendants filed their motion pursuant to Rule 12(b)(1) and 12(b)(6).

### Standard of Review

While it is unclear from Defendants' Motion and Suggestions in Support which claims

Defendants seek to dismiss on the basis of Rule 12(b)(6), Defendants arguments appear to be

limited to dismissal of Defendants Concord Finance, Inc. d/b/a Speedy Cash (hereinafter

"Concord"), CURO Financial Technologies Corp. (hereinafter "CURO Financial"), CURO

Intermediate Holdings Corp. (hereinafter "CURO Intermediate"), and Christian Porter

(hereinafter "Porter"). "To survive a motion to dismiss, a complaint must contain sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.

Iqbal*, 556 U.S. 662, 678 (2009). "A claim has factual plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

1

for the misconduct alleged." *Id*. When considering a motion to dismiss for failure to state a claim, the court must "accept as true all factual allegations in the complaint" and all reasonable inferences are drawn in favor of the nonmoving party. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007); *Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 850 (8th Cir. 2012). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

Defendants also raise a factual challenge as to the court's subject matter jurisdiction pursuant to Rule 12(b)(1). "When a district court engages in a factual review, it inquires into and resolves factual disputes." *Faibisch v. University of Minnesota*, 304 F.3d 797, 801 (8th Cir. 2002). In a factual challenge, "no presumptive truthfulness attaches to [Plaintiff's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating the merits of the jurisdictional claims." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 861 (8th Cir. 2013) (quoting *Osborn v. U.S.*, 918 F.2d 724, 726-30 (8th Cir. 1990)).

## ARGUMENT

**I. It Is Well Established That Failure To Have A Right-To-Sue Before Filing An Employment Discrimination Action Is Curable After It Has Been Commenced.**

Defendants would have this Court believe that a right-to-sue letter is jurisdictional and is necessary before filing a lawsuit, however this is simply incorrect. In support of this belief, Defendants rely, in part, on a case which has nothing to do with the Missouri Human Rights Act ("MHRA") or discrimination. Doc. 5, p. 6; *see Pettigrew v. Hayes*, 196 S.W.3d 53 (Mo. App. W.D. 2005). In *Pettigrew*, it was determined that a parent's failure to participate in a Missouri Department of Social Services hearing, a jurisdictional requirement, was required in order to appeal a decision. 196 S.W.3d 53. Defendants go further in citing another case where the

2

requirement to obtain a right-to-sue letter was not even an issue. Doc. 5, p. 5; *see Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994) (court was determining whether a litigated charge was "like or reasonably related to" an administrative charge of discrimination).

The MHRA sets forth the process completed by the Missouri Commission on Human Rights ("MCHR") for the issuance of a right-to-sue letter in response to a complaint of unlawful discrimination. Mo. Rev. Stat. § 213.111.1. Once the MCHR issues the right-to-sue letter, an MHRA claim may be brought. *Public School Ret. System of the School Dist. of Kansas City v. MCHR*, 188 S.W.3d 35, 43 (Mo. App. W.D. 2006). However, it is a well-recognized precedent that the issuance of the right-to-sue, although a prerequisite, is <u>not</u> a jurisdictional requirement. *Id.* at 44; *King v. Continental Electric, Inc.*, 2006 WL 1153800 (E.D. Mo. May 1, 2006); *Vankempen v. McDonnell Douglas Corp.*, 923 F.Supp. 146, 149 (E.D. Mo. 1996); *Rippee v. WCA Waste Corp.*, 2010 WL 816625 (W.D. Mo. Mar. 4, 2010); *Davis v. Bemiston-Carondelet Corp.*, 2006 WL 1722277 (E.D. Mo. June 20, 2006). **Because the right-to-sue is not jurisdictional, both federal courts in Missouri have found that a failure to obtain the right-to-sue can be <u>cured</u> after a complaint has already been filed with the court.** *Vankempen*, 923 F.Supp. at 149 (E.D. Mo. 1996) (motion to dismiss denied where later obtaining the right-to-sue cured plaintiff's MHRA action); *Clayton v. Speed Emissions, Inc.*, 2012 WL 1253066 (E.D. Mo. Apr. 13, 2012) (MHRA claims were not dismissed as the failure to yet obtain the MCHR right-to-sue was curable); *Rippee*, 2010 WL 816625 (W.D. Mo. Mar. 4, 2010) (motion to dismiss denied where plaintiff later obtained the MCHR right-to-sue and subsequently amended the petition); *King*, 2006 WL 1153800 (E.D. Mo. May 1, 2006) (same); *Hodges v. Cottage Hill Apartments*, 2005 WL 2233121 (W.D. Mo. Sept. 13, 2005) (same); *Davis*, 2006 WL 1722277

(E.D. Mo. June 20, 2006) (motion to dismiss denied where plaintiff was actively trying to obtain MCHR right-to-sue letter after bringing claims under the MHRA).

Once cured, courts have found that "because [a] plaintiff's action was on file when [s]he received the right-to-sue letter, [s]he meets the MHRA requirement that suit be filed within ninety days after receipt of notice of right to sue." *Vankempen*, 923 F.Supp. at 149. While courts have dismissed lawsuits or claims brought under the MHRA for lack of a right-to-sue, it was only due to the plaintiff making no attempt to cure the defect and obtain the letter. *See Whitmore v. O'Connor Management Inc.*, 156 F.3d 796, 800 (8th Cir. 1998) (while possible to cure after litigation began, plaintiff made no attempt to do so); *Simmons v. Directory Distributing Assocs.*, 2005 WL 2033426 (E.D. Mo. Aug. 22, 2005) (while plaintiff could have cured the defect by obtaining the letter, he did not do so).

Dismissal is not warranted here, as Plaintiff is in pursuit of her right-to-sue and is likely to receive it before Defendants' Motion is decided. As Defendants are well aware, Plaintiff has already received her right-to-sue from the EEOC. Ex. A. Plaintiff is now eagerly awaiting her right-to-sue from the MCHR in order to amend the Petition. As noted in *Vankempen*, the right-to-sue is not jurisdictional and can be cured. Once Plaintiff receives her right-to-sue and amends her Petition, this issue will be moot and litigation can continue.

Defendants further request that the Petition be treated as having been filed the date the MCHR issues the right-to-sue so that Senate Bill 43's changes to the MHRA will apply. However, this would be unprecedented, as no Court has ever done this. In nearly identical situations, courts have found amended petitions relate back to the date the original petition was filed. *Vankempen*, 923 F.Supp. at 149-50 (citing Fed. R. Civ. P. 15(c)(2)).[1] Even if this Court

---

[1] "Plaintiff's original complaint included an MHRA age discrimination claim. The only change plaintiff made in the Amended Complaint was to state that he had received notice of right to sue from the MCHR. Defendant was on

4

were to deem the Petition as being filed the date the MCHR issues the right-to-sue, the cause of action accrued at the time Plaintiff was terminated by Defendants, including Defendant Christian Porter, on or about March 20, 2017, long before Senate Bill 43's effective date of August 28, 2017.[2] Additionally, Plaintiff's Charge of Discrimination was filed in May 2017, which precedes Senate Bill 43's effective date as well. Therefore, Plaintiff's Petition should be considered under the pre-amended MHRA.

Dismissal, either with or without prejudice, is not an appropriate remedy, as Plaintiff will be receiving her MCHR right-to-sue shortly, therefore curing the problem identified by Defendants. As a result, Defendants' Motion should be denied.

## II. Plaintiff Had An Employment Relationship With All Defendants, Including Defendants Concord Finance, Inc. d/b/a Speedy Cash, CURO Financial Technologies Corp., And CURO Intermediate Holdings Corp.

Defendants are quick to throw out many of the companies named in this lawsuit, with virtually nothing to support their conclusion. However, Defendants CURO Management, LLC ("CURO Management"), Concord, CURO Financial and CURO Intermediate are all interrelated and should be considered Plaintiff's employers under either the "Joint Employer" or "Economic Realities" tests. Both tests have been used in Missouri, therefore Plaintiff will apply each test to demonstrate Defendants' external and internal interrelations. Additionally, due to Defendants' Removal and Motion to Dismiss, no discovery has been issued by either party as of the date of this filing. While Plaintiff has thoroughly looked into the intertwining companies contested in this lawsuit, the Court may need additional information. In the event the Court would like

---

notice of the facts underlying plaintiff's MHRA claim at the time this action was originally filed, and cannot assert any prejudice as a result of the amendment." *Vankempen*, 923 F.Supp. at 149-50.

[2] SB 43 will be addressed further under Section III of these Suggestions in Opposition located on page 15.

5

additional information, Plaintiff requests this Court allow Plaintiff to serve Defendants with discovery requests solely on these issues.

a. **Defendants Concord Finance, Inc. d/b/a Speedy Cash, CURO Financial Technologies Corp., and CURO Intermediate Holdings Corp. are "employers" under the MHRA.**

Under the MHRA, an "employer" is broadly defined as "…any person employing six or more persons within the state, and any person directly acting in the interest of an employer." Mo. Rev. Stat. § 213.010(7). While Plaintiff will later show an employment relationship existed with each company Defendant, first Plaintiff will demonstrate that Defendants are "employers" under the MHRA.

To begin, Defendant Concord is registered as a foreign corporation to do business in Missouri. Ex. B. Concord is the only Defendant that has a fictitious name filing for "Speedy Cash." Ex. C. In both the original fictitious name filing and the renewal, Concord has indicated the business address for this fictitious name is for the Speedy Cash store located at 1331 E. 63rd Street, Kansas City, Missouri 64110. Ex. C. From CURO Management's webpage, www.speedycash.com, the 1331 E. 63rd Street Concord location is listed as a CURO Management Missouri location.[3] Ex. D. This leaves Plaintiff to believe that Concord employs six or more individuals. Therefore, Defendant Concord is an "employer" within the MHRA.

Defendant CURO Intermediate is also registered as a foreign corporation to do business in Missouri. Ex. E. CURO Intermediate is the sole member of CURO Management, which Defendants do not contest employs Plaintiff. Doc. 1-3; 5-2. While Defendants adamantly state that CURO Intermediate does not "conduct operations in the State of Missouri or own or lease any property in the State of Missouri," it does own the trademarks CURO Management and the

---

[3] CURO Management, LLC is a named Defendant in this lawsuit. Doc 1, 1-2, p. 2. Defendants do not appear to contest that Plaintiff was employed by CURO Management, LLC or that CURO Management, LLC is an "employer" within the MHRA, therefore Plaintiff has not addressed it in this filing.

contested company Defendants use on their website. Ex. D, F. This intellectual property is used on real property, including storefronts and advertisements in Missouri. Ex. D, G. Therefore, Defendant CURO Intermediate is an "employer" within the MHRA.

Finally, Defendant CURO Financial is also registered as a foreign corporation to do business in Missouri. Ex. H. Again, Defendants claim that CURO Financial does not "conduct operations in the State of Missouri," yet Plaintiff was in contact with at least two individuals employed by CURO Financial regarding the discrimination, harassment and retaliation she and others were facing. Doc. 1-3, 5-2; Ex. I. These contacts then resulted in an investigation and further communications with at least one employee of CURO Financial, Ms. Anne Warren. Ex. I. Additionally, CURO Financial currently has numerous job postings for positions in the United States. This leaves Plaintiff to believe that CURO Financial employs six or more individuals. Therefore, Defendant CURO Financial is an "employer" within the MHRA.

Defendants cite to Missouri appellate court decisions in *Leeper* and *Brady*[4] in an attempt to "narrow" the breadth of the MHRA, but these cases only discuss liability for individuals sued under the MHRA, not the liability of corporations sued under the Act. There is no question that corporate entities, like Defendants Concord, CURO Intermediate, and CURO Financial, meet the broad definition of employer under the MHRA and are liable for discriminatory conduct against an individual such as Plaintiff under the MHRA. Mo. Rev. Stat. § 213.055.1; *see Hill v. Ford Motor Co.*, 277 S.W.3d 659, 669 (Mo. banc 2009) (holding "the statute is clear that the MHRA is intended to reach…the corporate or public employer"). Therefore, it is clear that all three contested company Defendants are "employers" under the MHRA.

**b. This Court has personal jurisdiction over CURO Financial Technologies Corp. and CURO Intermediate Holdings Corp.**

---

[4] *Leeper v. Scorpio Supply IV, LLC*, 351 S.W.3d 784, 792 (Mo. App. S.D. 2011); *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 113 (Mo. App. E.D. 2006).

Defendants are under the mistaken belief that personal jurisdiction does not exist as to Defendants CURO Financial or CURO Intermediate. To establish personal jurisdiction, Plaintiff is in agreement that personal jurisdiction arises out of a defendant's contacts with the forum state. *State ex rel. Norfolk Southern Ry. V. Dolan*, 512 S.W.3d 41, 48 (Mo. 2017). Although "the evidentiary showing required at the prima facie stage is minimal," the "showing must be tested, not by the pleadings alone, but by the affidavits and exhibits" supporting or opposing the motion. *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010); *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004). Defendants attempt to argue personal jurisdiction is established as either general or conduct-linked under Missouri law. Doc. 5. However, the 8th Circuit has established five factors that must be considered in determining whether sufficient minimum contacts exist for personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Johnson*, 614 F.3d at 794.

With this in mind, CURO Intermediate and CURO Financial have made numerous purposeful contacts with the state of Missouri further described below, including: communications to Plaintiff specifically over claims of discrimination, retaliation and other labor related issues; CURO Financial holding themselves out as doing business as Speedy Cash with numerous Missouri locations (including the store Plaintiff managed); CURO Intermediate holding the relevant trademarks used by all company Defendants (including the store Plaintiff managed); both companies being registered to do business in Missouri; CURO Financial holding the Human Resources Department over all company Defendants and receiving, investigating and responding to complaints of discrimination and retaliation (including complaints made by Plaintiff). Upon

information and belief, employees of CURO Financial have also conducted site visits in Missouri. While Plaintiff's ability to formulate the numerous contacts these companies have to the forum state are minimal due to the lack of discovery conducted this early on, the totality of the circumstances that the minimum contacts necessary to confer personal jurisdiction over CURO Intermediate and CURO Financial are present.

In regard to the fourth factor, Missouri is obviously interested in providing a forum for residents of Missouri to be able to litigate claims of discrimination and retaliation within Missouri. As to the fifth factor, the company Defendants hold a principal place of business in Wichita, Kansas which is not far from this Court, if this case were to remain before this Court, therefore Plaintiff is unaware of any inconvenience. Additionally, due to numerous Missouri contacts, the company Defendants have availed themselves to lawsuits in Missouri. In considering all of the above factors, it is clear this Court has personal jurisdiction over these contested company Defendants.

**c. There is sufficient evidence to support a determination that all company Defendants have a "Joint Employer" relationship.**

"In determining whether a 'joint employer'[5] relationship exists, the Eighth Circuit considers four factors: (1) interrelation of operations; (2) common management; (3) centralized control of labor relationship; and (4) common ownership or financial control." *Kossmeyer v. Lillibridge Healthcare Services, Inc.*, 2015 WL 1976273 (E.D. Mo. Apr. 30, 2015). No single factor is controlling. *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 392 (8th Cir. 1977). Applying the "joint employer" test, it is clear that Defendants CURO Management, Concord,

---

[5] The "joint employer" test is also known as the "single employer" or "integrated employer" test. *See Diaz v. AutoZoners, LLC*, 484 S.W.3d 64 (Mo. App. W.D. 2015); *Walton v. Edge Medical Professional Services, LLC*, 422 F.Supp. 2d 731, 749 (W.D. Mo. 2006).

9

CURO Intermediate and CURO Financial not only hold themselves out as a joint enterprise, but have created and conduct their internal operations accordingly as well.

### i. Interrelation of operations

In the present case, Defendants CURO Management, Concord, CURO Intermediate and CURO Financial are so interrelated as to be considered "joint employers" and as such are liable to Plaintiff for the illegal conduct, in that each Defendant acted in the interest of the other within the meaning of the MHRA. Mo. Rev. Stat. § 213.010(7) and (14). Both externally and internally there exists a significant degree of interrelationship. To the outside observer, the company Defendants appear closely related: all share the Speedy Cash trademarks, CURO Management's Speedy Cash website is "linked" to CURO Financials' website, CURO Financial describes themselves as "doing business as Speedy Cash" and "operat[ing] under a number of brands including Speedy Cash" on their website, Concord appears to own the Speedy Cash location on 1331 E. 63rd Street in Kansas City, Missouri, however CURO Management's website expressly advertises this physical location as one of their Missouri locations. Ex. C, D, F, G.

Internally, the degree of interrelationship between the company Defendants is even greater, particularly concerning their Missouri Secretary of State filings. Ex. B, C, E, H, J. Each of the company Defendants are registered to conduct business in Missouri. Ex B, E, H, J. Additionally, all filings have been signed by Mr. Eugene Thomas IV. Ex. B, E, H, J. Each of the company Defendants' principal place of business is the very same location, 3527 North Ridge Road, Wichita, Kansas 67205. Ex. B, E, H, J. The Speedy Cash trademarks, along with CURO Financial's trademark, all have CURO Intermediate as the registered owner. Ex. F.

### ii. Common management

10

All company Defendants also qualify as "joint employers" under the MHRA because the entities share identical management. The Western District has consistently found "commonality" exists in situations far less interrelated than what Plaintiff presents to this Court. In *EEOC v. Financial Assurance, Inc.*, the Western District held that even though a father and son, involved in separate ventures, "in no real sense 'managed' [the opposite company] at any level, he and his father consulted frequently, and in depth, in connection with that business." 624 F.Supp. 686, 690 (W.D. Mo. 1985). Based on that minimal degree of interrelationship, the Court ultimately concluded that this conduct represented "a fairly significant degree of common management at a practical level." *Id.* at 691.

In contrast, Concord, CURO Intermediate and CURO Financial have literally identical officers[6] and directors[7] as stated on their Missouri Secretary of State filings, with the exception of treasurer on Concord's filing. Ex. B, E, H. The other named company Defendant not contested as an employer, CURO Management, is an LLC and has only one sole member, CURO Intermediate. Doc 1-3. This hierarchy is consistent throughout the contested company Defendants. As previously stated, Mr. Thomas, as Secretary of <u>all</u> contested company Defendants, signed off on the most updated Missouri Secretary of State biannual filings on behalf of each of the company Defendants, including CURO Management. Ex. B, E, H, J. Mr. Rippel, a named Director of contested company Defendants, signed the Fictitious Name filing on behalf of Concord Finance to do business as Speedy Cash. Ex. C.

### iii. Centralized control of labor relationship

---

[6] Mr. Don Gayhardt, Mr. Roger Dean and Mr. Eugene Thomas IV as listed on the Missouri Secretary of State filings.
[7] Mr. Don Gayhardt, Mr. Doug Rippel and Mr. Chad Faulkner as listed on the Missouri Secretary of State filings.

As indicated in Plaintiff's Petition, Plaintiff contacted Human Resources to complain about the discrimination and being targeted by Defendant Porter. Doc. 1-2, p. 2-20. These complaints were made to Ms. Tammy White, listed as the Executive Vice President and Chief Human Resources Officer for CURO Financial, and Ms. Anne Warren, a Human Resources employee at CURO Financial. Ex. I. Following these communications, an investigation was conducted by the Human Resources Department of CURO Financial. While Defendants continue their attempts to shield the contested company Defendants, there is no denying that CURO Financial handled these complaints and indicated an investigation was being conducted. Ex. I. It appears CURO Financial may act as the Human Resources Department for hundreds of company Defendants' United States locations, including Plaintiff's Speedy Cash location in Independence, Missouri.[8]

In another incident, Plaintiff was in contact with Mr. Brian Cianciola, CURO Financial's Regional Director. Ex. K. These communications surround a Performance Improvement Notice ("PIN") Plaintiff was given. In response to Plaintiff's inquiry regarding the Notice, Mr. Cianciola stated "As I stated yesterday we are here to support you and your improvement with your areas of opportunities listed on the PIN…Please feel free to contact Christian [Porter], Anne [Warren] or myself if we can assist you in any way." Ex. K.

### iv. Common ownership or financial control

In order to represent a significant degree of ownership between multiple companies, neither complete nor majority ownership is required. *See Financial Assurance, Inc.*,624 F.Supp

---

[8] In Ex. K, email exchanges were made and included emails to ushumanresources@speedyinc.com. Other individuals employed by CURO Financial has the @speedyinc.com email contact, such as Brian Cianciola, Regional Director.

at 691. The Eighth Circuit has also recognized this to be the least relevant factor. *See Pulitzer Publ'g Co. v. NLRB*, 618 F.2d 1275, 1279 (8th Cir. 1980).

Here, the sole member of CURO Management is CURO Intermediate. Doc. 1-3, 5-2. As previously stated, CURO Intermediate has the same officers and directors as the other contested company Defendants. Ex. B, E, H. These overlapping members should be enough to satisfy this factor. Ownership largely remains unknown at this point beyond the information already provided due to the lack of discovery conducted in lawsuit. While limited discovery on these issues would be beneficial to this analysis, however it is abundantly clear that given the facts listed above, it follows that the company Defendants should be considered "joint employers."

**d. There is sufficient evidence to support a determination that all company defendants are Plaintiff's employers under the "Economic Realities" test.**

In determining whether multiple alleged employers qualify as having an employer-employee relationship with Plaintiff, *Diaz v. Autozoners, LLC*, choosing not to use the test described above, modified the existing "Economic Realities" test to account for the MHRA's statutory requirement that an entity that is not the employer-in-fact "directly act[s] in the interest of" the employer-in-fact. Mo. Rev. Stat. § 213.010(7); 484 S.W.3d 64, 80 (Mo. App. W.D. 2015). Therefore, in accordance with *Diaz*, the Court may decide to consider these alternative factors: (1) who was responsible for establishing policies and training the employees concerning discrimination; (2) who was responsible for receiving, investigating, and responding to discrimination complaints; and (3) who had the power to discipline employees who may have failed to comply with anti-discrimination policies.[9]

**i. Responsible for policies and training.**

_____

[9] These factors have been slightly modified from those listed in *Diaz*, as *Diaz* was alleging harassment, not alleged by Plaintiff.

13

The Human Resources Department for all company Defendants was housed in CURO Financial. In discussing misconduct and complaints of discrimination, harassment and retaliation, Plaintiff turned to CURO Financial's Human Resources Department for assistance. In fact, even after complaining of discrimination and retaliation Plaintiff reached out to Matt Miller who directed her to Human Resources, which were all employees of CURO Financial. Until further discovery is conducted, the company Defendants responsible for policies and training Plaintiff was subject to is largely unknown.

ii. **Responsible for receiving, investigating and responding to complaints.**

Plaintiff's complaints of discrimination were investigated by CURO Financial's Human Resources Department. Ex. I. Plaintiff made her complaints known to numerous individuals, including Tammy White (CURO Financial), Anne Warren (CURO Financial), and Matt Miller (unknown company employer). Ex. I. Matt passed Plaintiff's complaints onto the Human Resources Department, namely CURO Financial. Following the investigation, Anne Warren, employed by CURO Financial, wrote Plaintiff regarding the findings of the investigation seemingly conducted. Ex. I. Although Ms. Warren is employed by CURO Financial, the letterhead reads CURO Management. Ex. I. Further, this letter states the address 3527 N Ridge Road, Wichita, Kansas, the headquarters of all contested company Defendants. Ex. B, E, H, I, J.

iii. **Power to discipline employees who have failed to comply with policies.**

Finally, Plaintiff is unaware that any individual was disciplined as a result of her complaints, apart from herself. However, Human Resources operates out of CURO Financial, therefore discipline operates out of CURO Financial.

e. **Overall, it is clear the contested company Defendants were Plaintiff's employers.**

It is clear that all contested company Defendants are "employers" under the MHRA. Regardless of the test this Court chooses to use to determine whether these companies should be considered Plaintiff's employers, there is no denying Plaintiff has provided substantial evidence that CURO Management, Concord, CURO Financial and CURO Intermediate were Plaintiff's employers for purposes of the MHRA. Therefore, this Court should deny Defendants' Motion to Dismiss regarding this issue.

### III. Defendants' Diversity Argument Fails Because At The Time Plaintiff's Claims Accrued, The Missouri Human Rights Act Provided For Individual Liability.

Removal of this action, on Defendant's assertion that naming Defendant Porter is "an improper attempt to defeat federal diversity jurisdiction" is improper. The changes made to individual liability by Senate Bill 43 ("SB 43") should not be applied retroactively because the legislature did not manifest a clear intent to do so, and the elimination of individual liability is a substantive right and cannot be applied retroactively.

#### a. Senate Bill 43 should not be applied retroactively.

It is well established that the Missouri Constitution prohibits laws that are retrospective in operation. Mo. Const. art. I, §13 ("That no ex post facto law nor law impairing the obligations of contracts or retrospective in operation…can be enacted"). "A law is retrospective in operation if it takes away or impairs vested or substantial rights acquired under existing laws or imposes new obligations, duties, or disabilities with respect to past transactions." *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 769 (Mo. banc 2007) (citing *Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d 338, 340 (Mo. banc 1993)).

"There are, however, two recognized exceptions to the rule that a statute shall not be applied retrospectively: (1) where the legislature manifests a clear intent to do so, and (2) where the statute is procedural only and does not affect any substantive right of the parties." *State ex*

15

*rel. St. Louis-San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 410 (Mo. 1974); *Vaughan v. Taft Broadcasting Co.*, 708 S.W.2d 656, 660 (Mo. 1986) (nothing that "a statute dealing only with procedure or remedies" may be applied retrospectively). "The distinction is that substantive law relates to the rights and duties giving rise to the cause of action, while procedural law is the machinery used for carrying on the suit." *Hess*, 220 S.W.3d at 769.

### i. The legislature manifested a clear intent that Senate Bill 43 not be applied retroactively.

The first exception fails as SB 43 did not contain any language manifesting an intent to apply the MHRA amendments retroactively. In stark contrast, the clear legislative intent was that the law not be retroactive as testified to the House Special Committee on Litigation Reform by the Bill's sponsoring Senator, Mr. Gary Romine, when he stated the Bill had no retroactivity clause and would not affect the outcome of the current MHRA lawsuit pending against his own business. Further, Senator Romine stated on his official Missouri Senate webpage that, "SB 43 isn't a means to get around any ongoing litigation involving my business. It is in no way retroactive and therefore doesn't apply to any case opened before the law takes effect."[10]

The evidence overwhelmingly indicates that the legislature had no intent for SB 43 to apply retroactively.

### ii. The clause at issue affects a substantive right of Plaintiff and therefore cannot be retroactive.

The second exception deals only with procedural issues, not present here. Indeed, if a statutory provision is substantive, then it can only be applied prospectively to cases which "accrued" after the effective dates of the change in the law. *See Goad v. Treasurer of State*, 372 S.W.3d 1 (Mo. App. W.D. 2011). A case "accrues" when the wrongful conduct occurs that gives

---

[10] http://www.senate.mo.gov/sen-gary-romines-capitol-update-legislation-to-restore-fairness-balance-to-missouris-employment-discrimination-laws-nearing-finish-line/ - last visited October 30, 2017.

rise to the damage alleged in the claim (here: March 2017). *Powel v. Chaminade College Preparatory, Inc.*, 197 S.W.3d 576 (Mo. banc 2006); *see also Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 760 (Mo. 2010) (statutory change to damage cap could not be applied to a cause of action that accrued prior to the effective date of the law); *State ex rel. St. Louis-S.F.R. Co., v. Buder*, 515 S.W.2d 409, 411 (Mo. 1974) (increase in damage cap could not "be applied to acts which occurred when the protection [of the lower cap] was afforded"); *Gervich v. Condaire, Inc.*, 370 S.W.3d 617, 622-23 (Mo. 2012) (court held that a change to workers' compensation law could not apply to a case based on an injury to an employee that occurred before the effective date of the law).

**b. Defendants cannot meet their burden to show there is *no possibility* for Defendant Porter to be held liable under the MHRA.**

It is undisputed that Plaintiff's claim accrued on March 20, 2017. At that time, the plain language of the Missouri Human Rights Act provided for individual liability. Plaintiff filed her charge of discrimination on May 11, 2017. Doc. 1-2, p. 16-20. On August 25, 2017, Plaintiff filed this action in the Circuit Court of Jackson County asserting claims under the MHRA. *See* Notice of Removal, Doc. 1.

Citing the August 28, 2017 amendment to the MHRA, removing individual liability, Defendants argue that Defendant Porter was improperly named in Plaintiff's lawsuit, thus creating diversity of citizenship. At the time Plaintiff's claim accrued, however, the plain language of the MHRA provided for individual liability. Indeed, the MHRA's definition of employer included, "any person directly acting in the interest of any employer." R.S.Mo. §213.010(7). Finally, prior to the August 28, 2017 amendments, the Missouri Supreme Court ruled that an individual can be held personally liable if he is acting directly in the interest of the employer while engaging in discriminatory conduct. *Hill*, 277 S.W.3d at 669.

17

Indeed, Defendants have not and cannot meet their burden to show there is no possibility for Defendant Porter to be held liable for state court violations (occurring prior to the August 28, 2017 amendment). Defendant Porter was Plaintiff's District Manager. Doc. 1-2, p. 5. It is undisputed that, Plaintiff's claim accrued before the amendment removing individual liability from the MHRA became effective. As discussed, this change in the law is substantive and, therefore, not retroactive.

Accordingly, the elimination of individual liability clearly affects Plaintiff's substantive right of redress for her MHRA claims.[11] Consequently, Plaintiff has the right to sue and, of course, presumably recover damages from Defendant Porter for the reasons stated in her Petition. In short, a Missouri court undoubtedly would hold that Defendant Porter allegedly engaged in activity that would support a cause of action against him under the pre-amended MHRA, destroying Defendants' diversity argument.

## IV. Plaintiff Has Properly Raised A Race Discrimination By Association Claim.

Defendants' sole argument that Plaintiff's Race Discrimination by Association claim ("Association claim") should be dismissed lies on the characterization that it was only based on Plaintiff's children not included in her Charge of Discrimination. In doing so, Defendants have purposefully left out Plaintiff's association to African American co-workers and applicants who were discriminated against by Defendants based on their race, included in both her Charge and Petition. Doc. 1-2, p. 9-10. Not only has Plaintiff set forth numerous facts which reasonably relate to her basis for the Association claim and checked "race" on her Charge, but Plaintiff goes on to state, "I believe I was discriminated against based on my age and/or gender and retaliated against for **complaining about the company** and the district manager's discriminatory

---

[11] See Exhibit L, *Nicholson v. Scavuzzo's Inc., et al.*, 1516-CV22139 (September 21, 2017, Charles H. McKenzie Order refusing to retroactively apply the August 28, 2017, MHRA damage modifications to a pending case).

employment practices include age and **race based discriminatory hiring practices** and treatment of employees." Doc. 1-2, p. 16-20 (emphasis added).

**It is well established that a charge need not set forth all evidence in the charge**, only enough evidence to give the employer notice of the subject matter of the charge and identify generally the basis for the claim. *Callahan v. University of Cent. Mo.*, 2013 WL 796560 (W.D. Mo. Mar. 4, 2013) (citing *Fair v. Norris*, 480 F.3d 865, 867 n.2 (8th Cir. 2007)). "A plaintiff must at least mention some facts or particulars relating to the later-asserted claim." *Reed v. McDonalds Corp.*, 363 S.W.3d 134, 143 (Mo. App. E.D. 2012). Charges of discrimination are interpreted liberally "in an effort to further the remedial purposes of legislation that prohibits unlawful employment practices." *Alhalabi v. Mo. Dep't of Nat. Res.*, 300 S.W.3d 518, 525 (Mo. App. E.D. 2009); *see also Callahan*, 2013 WL 796560. As a result, administrative remedies are deemed exhausted as to all incidents of discrimination that are "likely or reasonably related" to the allegations of the administrative charge. *Id.* "A claim is 'like or reasonably related' to the…charge [of discrimination]…if there is a factual relationship between them." *Kerr v. Mo. Veterans Comm.*, WD80274, at 12 (Mo. App. W.D. Oct. 31, 2017) (internal quotations omitted).

For an associational claim, plaintiff need not claim each and every relationship in her charge, rather, that an association existed. Plaintiff did just that. On Plaintiff's Charge of Discrimination, Plaintiff checked "race." Doc 1-2, p. 16-20. Plaintiff goes on to describe each of the individuals she attempted to hire or re-hire, with a number of them being African-American. *Id.* While Plaintiff later included that she had black children in her Petition, this was not the sole basis for bringing a race discrimination by association claim, as Defendants would like this Court to believe. Plaintiff's Association claim also stems from her employment relationship with her

19

co-workers and those she employed or was trying to employ.[12] Doc. 1-2, p. 9-10. As stated in her Charge and Petition, Plaintiff complained several times that the discriminatory hiring practices used by Defendants was just that, discriminatory. Doc. 1-2, p. 2-20. After several complaints were made and Plaintiff was required to turn down well-qualified African-American applicants, Plaintiff was terminated. *Id.* While Plaintiff has included her African-American children, Plaintiff has also thoroughly described in the Charge and Petition the association with employees and applicants as a basis for Plaintiff's Association claim.

Overall, Plaintiff was discriminated against due to her association with African-Americans, whether it be due to her children, her employment relationships, or her desire to hire applicants. Plaintiff sufficiently put Defendants on notice and included facts reasonably related to the Race Discrimination by Association claim. As such, Plaintiff should not be barred from pursuing this claim.

## CONCLUSION

For the above-stated reasons, Plaintiff respectfully requests this Court deny Defendants' Motion to Dismiss Plaintiff's Petition. Alternatively, Plaintiff respectfully requests that this Court allow Plaintiff to conduct limited discovery over the above contested issues to assist in determining which Defendants are "employers" under the MHRA and whether this Court has personal jurisdiction over two of the contested company Defendants.

---

[12] A co-worker relationship is enough to bring an association discrimination claim. *Harris v. Mo. Dept. of Mental Health*, 2009 WL 152105 (E.D. Mo. Jan. 21, 2009) (denying motion to dismiss a Caucasian employee's race association claim on the basis of a co-worker relationship with two African American co-workers, among other claims).

Dated: November 6, 2017                    Respectfully submitted,

                                           **BCU Law Offices, LLC**

                                            /s/ *Bailey McCurley*          _____
                                           Bailey McCurley #69220
                                           Brandon D. Burkhart #65815
                                           4743 Troost Avenue
                                           Kansas City, Missouri 64110
                                           (816) 945-6467
                                           bailey@bculegal.com
                                           brandon@bculegal.com
                                           ATTORNEYS FOR PLAINTIFF




## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of November, 2017, a copy of the foregoing was filed electronically via the Court's electronic filing system which will send a notice of electronic filing to the following counsel of record:

Kyle B. Russell
Phillip C. Thompson
ATTORNEYS FOR DEFENDANTS


                                            /s/ *Bailey McCurley*          _____
                                           ATTORNEY FOR PLAINTIFF

21